## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTONIO ANCONA
1686 VILLAGE GREEN
SUITE 201
CROFTON MARYLAND 21114

       Plaintiff

   VS.

PARAGON INTERNATIONAL WEALTH
 MANAGEMENT, INC.
5000 YONGE STREET, # 1901
NORTH YORK, ON M2N 7E9
CANADA
 and

SAXON.KRUSS
21 DUNDAS SQUARE, SUITE 1406
TORONTO, ONTARIO
CANADA                      Civil No._____
and

EDWARD ROSE
5000 YONGE STREET # 1901
NORTH YORK, ON M2N 7E9
CANADA
and

MICHAEL KING
5000 YONGE STREET # 1901
NORTH YORK, ON M2N 7E9
CANADA
and

-2-

MARGARITA GANIEVA
21 DUNDAS SQUARE, SUITE 1406
TORONTO, ONTARIO
CANADA
           Defendants

_____

## COMPLAINT
### (Common Law Fraud and Civil Rico)

### I

### Jurisdiction

This action arises under the provisions of 28 USC section 1332 (diversity jurisdiction) and under the provisions of 18 USC section 1961-1964 (commonly referred to as Civil RICO), which provides jurisdiction in the United States District Courts to prevent and restrain violations of 18 USC section 1962, and to award damages and reasonable attorneys fees to citizens injured in their business and property as a result of such violations. The complaint is also based upon the Maryland Consumer Protection Act section 13-301, Commercial Law Article.The amount in controversy exceeds $75,000.

### II

### VENUE

Venue is proper in this district pursuant to the provisions of section 1391 (b) (2) in that a substantial part of the events giving rise to the claims herein occurred in this judicial district and under the provisions of section 1391 (b) (3), since none of the defendants reside in the United States.

-3-

## III

## THE PARTIES

1.  The plaintiff, Antonio Ancona, is a registered engineer, residing in Annapolis in the State of Maryland. In this action, he was a buyer of colored diamonds from the defendant Edward Rose, and Michael King who were acting individually and as the agents and employees of the defendant Paragon International Wealth Management Inc.

2. The defendant Paragon International Wealth Management, Inc.(hereinafter referred to as "Paragon") Is a Canadian corporation purporting to act as an investment service in Toronto Canada, and in the joint capacity as the seller of colored diamonds and other jewelry which could be sold to consumers like the plaintiff, for personal use, and for resale by the defendant for the plaintiff and other consumers when such jewelry appreciated in value.

3. The defendant Edward Rose is a principal of Paragon who acted at all times hereinafter discussed, individually and as the agent and employee of the defendant Paragon.

4. The defendant Michael King is also a principle of Paragon who acted at all times hereinafter discussed, individually, and as the agent and employee of the defendant Paragon.

5. The defendant Saxon.Kruss is a Canadian Company purportedly engaged in gemological research and valuation. The defendant Margarita Ganieva purports to be a B.A. Gemologist and certified jewelry appraiser who, at all times hereinafter discussed, acted individually, and as an agent and employee of the defendant Saxon.Kruss.

## IV

## STATEMENT OF FACTS

6. During  July 2015, the plaintiff Antonia Ancona received solicitations

-4-

by employees of Paragon International for the sale to him of jewelry which was supposedly GIA certified as to value for both personal uses and as an investment asset. He became an occasional purchaser, without incident, until March 2, 2016.

7. At that time, he was contacted again by the defendant Paragon International Wealth Management, Inc. through its principal Michael King, with whom he had previously purchased jewelry. Mr. King told the plaintiff about the availability of 10 different items of diamonds which reportedly had a value of $546,250 which could be purchased for approximately $200,000 and then be held for safekeeping by Mr. King, acting for Paragon. Thereafter those items of jewelry could then be resold for an amount greater than the amount the plaintiff paid thereby increasing the value of the plaintiff's account at Paragon. In reliance upon these representations and his past dealings with Paragon, the plaintiff assembled the funds necessary to purchase the jewelry.

7. Approximately one year later the plaintiff was contacted by the defendant Edward Rose, another principle of Paragon, who told him that Paragon had acquired a Ruby necklace, a 5.21 carat white diamond set in 18 carat white gold, and a white diamond custom pendant and necklace. The defendant Rose stated that a wealthy Canadian lady had reneged on a contract for the purchase of this jewelry and had lost the rights to purchase it. He stated that the combined value of the jewelry was at least $3,150,000 but under the circumstances surrounding the Canadian woman's failure to follow through with her contract, Mr. Ancona could purchase it for $578,836.51.

8. Mr. Rose proposed that Paragon would hold the jewelry and resell it for Mr. Ancona for much more than $578,836.51

9. The Plaintiff advised Mr. Rose, initially, that he didn't have the funds to purchase the jewelry and couldn't buy it; however Mr. Rose strongly recommended that the plaintiff use whatever funds he had in checking accounts; that he sell as many stock options that he had, and that he obtain the remaining funds by using credit cards. He assured Mr. Ancona that he, Rose, would be able to sell it readily within a couple months for $2 million so there wouldn't be much of a problem to pay back the charges.

10. To further persuade the plaintiff to proceed with the purchase, the

-5-

defendant Rose sent to the plaintiff pictures of the jewelry and appraisals by the defendant Margarita Ganieva who issued an appraisal of the jewelry as having a value, in the aggregate, of $5,479,755. When the defendant Rose was questioned as to why the jewelry could be sold to the plaintiff at such a reduced price, Rose explained that it had to do with the circumstances under which the Canadian buyer had failed to proceed with her contract to purchase.

11.   Again, because some previous smaller purchases from Paragon had yielded sales of increased value, the plaintiff was persuaded to gather together the funds necessary to purchase the jewelry. He sold most of his personal stock options, withdrew funds from his personal savings account, and charged $270,000 on credit cards, including a $150,000 charge to his American Express account, in order to make the $578,836.51 purchase.

12. The plaintiff was advised to keep the jewelry in a bank safety deposit box and the jewelry was sent to him via a Brinks Armored Truck on April 16, 2017, which further induced the plaintiff to rely upon the defendants statements with respect to the value of the jewelry and the ease with which it could be resold at an appreciated value.

13. The defendant Rose thereafter told the plaintiff that the price the jewelry could bring on resale would vary and could be only $1,700,000; that he, Rose, would sell the jewelry at auction to obtain the best possible price. However by July 22 of 2017 the plaintiff heard nothing further about the resale of the jewelry and had been unable to reach the defendant Michael King by telephone or by email. When the plaintiff inquired of Rose as to the status of the jewelry he had purchased through Michael King at Paragon the defendant Rose stated that he, Rose knew nothing about it and declined to furnish any additional information.

14. Given these unsatisfactory responses, the plaintiff demanded by email that the defendant Rose sell the jewelry as soon as possible. In subsequent telephone calls Rose advised the plaintiff that some resale deals had fallen through but that the plaintiff need not worry because somebody else would buy the jewelry soon. However the defendant Rose would not identify the prospective buyers to the plaintiff, telling the plaintiff that he, Rose, could not reveal that information.

15. At that point, the plaintiff decided to have an independent appraisal of the

-6-

value of the jewelry in his custody that he had previously purchased. In two subsequent appraisals by certified GIA gemologists plaintiff discovered that the articles of jewelry purchased by him were in the nature of costume jewelry and had at most a value of $131,275 in the aggregate. On that basis, it was obvious that the appraisals prepared by the defendant Margarita Ganieva and the statements made by the defendant Rose, relied upon by the plaintiff, were false and fraudulent and intended to induce the plaintiff to buy the jewelry for a price that was more than $400,000. in excess of its real value.

16.   When the plaintiff began to discover the misrepresentations made by the defendants with respect to the purchases of jewelry he made, he attempted to contact Michael King to demand the return of the diamonds that King was allegedly holding for safekeeping; however, the defendant King has not responded to his calls, nor has he otherwise responded and he has thereby constructively refused to deliver the jewelry to the plaintiff.

17. Once the plaintiff discovered the true facts he demanded a refund of his money. In response, the defendant Rose told him he couldn't do so because of an alleged legal requirement that prevented him from refunding the plaintiff's money.

18. To date, the defendants have failed and refused to return the plaintiff's payments made to the defendant Paragon through their agents Edward Rose and Michael King.

19. The plaintiff has also learned that the defendants have engaged in at least three other transactions with individuals in the United States and in Canada during the period from 2015 through 2018 which were similarly based upon false and fraudulent statements and conduct by the defendants, representing a pattern of criminal conduct and racketeering.

## Count 1
( Common law fraud)

20.  The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 19 above.

-7-

21. As a result of the actions of the defendants Edward Rose, and Michael King, both acting individually and as the agents of the defendant Paragon International Wealth Management Inc., and as a result of the false and fraudulent appraisals prepared by the defendant Margarita Ganieva, acting individually and as the agent and employee of the defendant Saxon.Kruss, the plaintiff has sustained compensatory damages in the amount of $1 million including, interest, costs, loss of the economic value of his funds and attorneys fees. In addition, because of the intentional false and fraudulent conduct of the defendants he claims punitive damages in an amount to be determined by this Court.

## COUNT 2
### (Civil RICO)

22. The plaintiff repeats and realleges the allegations contained in paragraphs 1 through19 above.

23. Section 1964 of Title 18, United States Code, provides that any person injured in his business or property by reason of a violation of Title 18 USC section 1962, may sue in an appropriate United States District Court and shall recover threefold the damage he has sustained plus the costs of suit, including reasonable attorneys fees.

24. The defendants Paragon, Rose, King, Saxon. Kruss and Margarita Ganieva acting jointly, constitute an "enterprise" within the meaning of 18 USC section 1961 (4).

25.. The defendants' actions described above constitute a pattern of racketeering activity within the meaning of 18 USC section 1961 (5).

26. The actions of the defendants described above violate 18 USC section 1962 (c) which prohibits participating in, or conducting the affairs of an enterprise through a pattern of racketeering activity.

27. As a result, plaintiff has sustained damages as described in paragraph 21 above and request that this Court issue a judgment against each of the defendants individually, jointly and severally, in an amount three times the damages described

-8-

in paragraph 21 above.


## Count 3
### (Violation of Maryland Consumer Protection Act)

28. The plaintiff repeats and realleges the allegations contained in paragraphs 1 through 19 above.

29. The actions of the defendants described above constitute unfair and deceptive trade practices with respect to the sale of jewelry to the plaintiff within the meaning of section 13-301 of the Maryland Commercial Law article.

30. As a result plaintiff brings this action against the defendants Paragon, Edward Rose, Michael King, Saxon.Kruss and Margarita Ganieva individually, jointly and severally, and demands damages against the defendants in the amount of $1 million plus interest, costs and attorneys fees.

## Count Four
### ( Trover and Conversion )

31. The plaintiff repeats and reallegesthe allegations contained in paragraphs 1 through 19 above.

32. The constructive refusal by the defendant King, acting individually and as the agent and employee of Paragon, to deliver to the plaintiff the jewelry that the plaintiff paid for, and that Michael King was allegedly holding for safekeeping, is intentional, without justification, and constitutes a conversion of the plaintiffs property; namely, the diamonds he purchased.

Wherefore, plaintiff demands judgment against the defendant Michael King and the defendant Paragon International Wealth management Inc., jointly and individually, for compensatory damages in the amount of $1 million plus interest, costs and reasonable attorneys fees.

-9-

## Count Five
## (Securities Law Violations)

33. The plaintiff repeats and realleges the allegations contained in paragraphs 1 through 19 above.

34. The damages sustained by the plaintiff were caused by reliance on the defendants' misrepresentations and scheme to defraud, made intentionally with scienter, and were made in connection with the purchase or sale of a security and were furthered by the defendants' use of the mails.

35. To the extent, that plaintiff made investments in the jewelry described above and was reasonably led to expect profits to be derived from it's resale by the defendants, an investment contract existed.

36.  Such circumstances demonstrate a violation of Section 10 (b) 5 of the Securities and Exchange act.

Wherefore the plaintiff demands judgment against the defendants Paragon, Edward Rose, Michael King, Margarita Ganieva and Saxon.Kruss in the amount of $1,700,000 plus interest, costs and reasonable attorneys fees.

_//ss_____
Joseph J. D'Erasmo
Bar # Md02449
Attorney for the Plaintiff
301-989-1836